# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | ID No. 2110001942 |
| | ) | |
| KATHLEEN MCGUINESS | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Submitted: April 27, 2022
Decided: May 13, 2022

**Defendant's Motion to Dismiss Count Three – DENIED**

**MEMORANDUM OPINION**

Mark A. Denney, Jr., Esquire, Department of Justice, 820 North French Street, 7th Floor, Wilmington, Delaware 19801. Attorney for State of Delaware.

Steven P. Wood, Esquire and Chelsea A. Botsch, Esquire, McCarter & English, LLP, Renaissance Centre, 405 North King Street, 8th Floor, Wilmington, Delaware 19801. Attorneys for Defendant.

**CARPENTER, J.**

Before the Court is Defendant Kathleen McGuiness's ("Defendant" or "McGuiness") Motion to Dismiss Count Three of the Indictment.[1]  For the reasons set forth in this Opinion, Defendant's Motion to Dismiss is **DENIED**.

## I.   FACTUAL & PROCEDURAL BACKGROUND

On October 10, 2021, the Defendant was charged by indictment in the above captioned matter with Conflict of Interest (Count One), Felony Theft (Count Two), Structuring: Non-Compliance With Procurement Law (Count Three), Official Misconduct (Count Four), and Act of Intimidation (Count Five).[2]  Defendant was reindicted by a different Grand Jury on March 28, 2022.[3]  The new Indictment did not include any new or additional charges but extended the date range for Counts Four and Five, and included additional facts to support Counts Three and Five.[4]

Count Three alleges that on December 19, 2019, Defendant entered into a contract for $45,000 with My Campaign Group ("MCG") for "communication services."[5]  The MCG contract was not submitted for public bidding, nor was it required to be because it totaled less than $50,000.[6]

---

[1] Def.'s Mot. to Dismiss Count Three of the Indictment, D.I. 57, 2110001942, ¶2 (Apr. 5, 2022)(hereinafter "Def.'s Mot.").
[2] *Id*. at ¶ 1.
[3] Re-Indictment, D.I. 54, 2110001942, p. 2, 5, 6, 9, 10 (Mar. 28, 2022)(hereinafter "Indict.").
[4] *Id*.
[5] *Id*. at ¶ 29.
[6] *Id*.

To pay for the contract, the Office of Auditor of Accounts ("OAOA") allegedly split some payments into amounts less than $5,000 and used various sources of funding including the OAOA's General Fund and the Coronavirus Relief Fund.[7] Payments less than $5,000 are not required to be approved by the Division of Accounting ("DOA") and thus remain within the control and approval of the agency.[8] And, the Delaware Budget and Accounting Policy Manual ("BAPM") required that a purchase must not be split into multiple transactions under $5,000 to circumvent the State Procurement Code.[9]

Around September of 2020, MCG's founder established a second company called Innovate Consulting ("Innovate").[10] On September 23, 2020, Innovate successfully won the bid to contract with the OAOA for "subject matter expert and analyst on various topics," and "communication of reports about topics including, but not limited to education and healthcare," and assistance "with the writing and editing for initiatives."[11] Between November 4, 2020 and February 12, 2021, the OAOA paid Innovate Consulting $77,500.[12] While there are no allegations that this second contract with Innovate was improper, the State does assert that the final

---

[7] *Id.* at ¶ 31.
[8] *Id.* at ¶ 30.
[9] Chapter 7 of the Del. Budget and Accounting Policy Manual (BAPM), version 4.34, at §7.3.1, p. 5.
[10] Re-Indict. at ¶ 36.
[11] *Id.* at ¶ 37.
[12] *Id.*

3

payment for the MCG contract was paid by a state purchase card to the founder's PayPal account and incorrectly posted to the Innovate contract.[13]

Count Three charges Defendant with a violation of 29 *Del. C.* §6903 ("Section 6903") for willfully fragmenting or subdividing payments for the MCG contract by structuring payments under that contract to be less than five thousand dollars in order to avoid compliance with the State Procurement Code.[14]

On April 4, 2022, Defendant filed a Motion to Dismiss Count Three of the Indictment pursuant to Delaware Superior Court Rules of Criminal Procedure ("Rule" or "Rules") 7(c) and 12(b), and 48(b).[15] On April 5, 2022, the State filed an opposition to Defendant's Motion.[16] On April 27, 2022, the Court held oral argument on Defendant's Motion to Dismiss Count Three, and now, issues its decision.

## II.   STANDARD OF REVIEW

A defendant is permitted to file a Rule 12(b)(2) motion to dismiss based on defects in the indictment or information.[17] A motion to dismiss is concerned with the sufficiency of the indictment on its face.[18] In determining the sufficiency of an

---

[13] *Id*. at ¶¶ 32, 37.
[14] *Id*. at ¶ 39.
[15] Def.'s Mot. at 21.
[16] State's Resp. in Opp'n to Def.'s Mot. to Dismiss Count Three, D.I. 60, 2110001942, 1 (Apr. 5, 2022)(hereinafter "State's Resp.").
[17] Super. Ct. Crim. R. at 12(b)(2).
[18] *State v. Shahan*, 335 A.2d 277, 283 (Del. Super. Ct. Mar. 18, 1975).

indictment, the Court should consider whether the indictment informs the defendant of the charge with sufficient particularity to permit her to prepare her defense properly.[19]

Rule 48(b) is a codification of the Court's inherent power to dismiss an indictment for unnecessary delay in the prosecution of a matter.[20] To be dismissed under Rule 48(b), the delay must be attributable to the prosecution and such delay "must be established to have had 'a prejudicial effect upon defendant' beyond that normally associated with a criminal justice system necessarily strained by a burgeoning case load.'"[21]

## III. DISCUSSION

Defendant moves to dismiss Count Three of the Indictment because it fails to charge an offense and provide fair notice of what she is called upon to defend.[22] Defendant argues that Count Three must be dismissed because the indictment fails to allege that Defendant structured two or more no-bid contracts, and it fails to allege which section of Chapter 69 or the BAPM Defendant intended to violate when she allegedly structured payments.[23]

---

[19] *Id*. at 284.
[20] *State v. McElroy*, 561 A.2d 154, 156 (Del. 1989).
[21] *Id*. at 156-7.
[22] Def.'s Mot. at ¶¶ 36-37.
[23] *Id*. at ¶ 39.

Conversely, the State opposes dismissal arguing that the Indictment is sufficient under Delaware law and that it provides precise detail of Defendant's alleged conduct in violation of Section 6903.[24]

Now, the Court is tasked with analyzing whether the Indictment sufficiently alleges conduct to support that Defendant willfully fragmented or structured payments to circumvent the State Procurement Code.

Under Delaware Rule 7(c), an indictment must be a "plain, concise and definite written statement of the essential facts constituting the offense charged."[25] "The courts of this State have consistently viewed an indictment as performing two functions: to put the accused on full notice of what [she] is called upon to defend, and to effectively preclude subsequent prosecution for that same offense."[26]

"An indictment is sufficient if the offense is charged substantially in the words of the statute, or its equivalent language."[27] Tracking the language of the statute is insufficient, however, when the words of the statute do not fully and expressly, without uncertainty or ambiguity, set forth all of the elements necessary to constitute the offense intended to be punished.[28] In determining whether the crimes charged give notice and allow for a defense, the Court "examines the statutes at issue" and

---

[24] State's Resp. at 1.
[25] Super. Ct. Crim. R. 7(c).
[26] *Malloy v. State*, 462 A.2d 1088, 1092 (Del. June 29, 1983).
[27] *State v. Allen*, 112 A.2d 40, 43 (Mar. 7, 1955).
[28] *Id*.

ascertains the "proper interpretation of criminal activity under the relevant criminal statutes."[29]

The Court finds that Section 6903 sets forth all essential elements of the offense and does so without uncertainty or ambiguity. The essential elements of Section 6903 are (1) a contract for materials, nonprofessional, public works, or professional services; (2) the fragmenting or subdividing of that contract, (3) with the intent to avoid compliance with the State Procurement Code.

First, it is undisputed that the MCG contract would be one included within those in the statute. The indictment specifically alleges that the MCG contract was for "communication services," which the Court finds to be most like professional services as defined in Section 6902(20).[30] Therefore, this essential element is met, and the MCG contract is the type of contract that Section 6903 is focused on regulating.

Next, the parties dispute the conduct required for fragmenting and subdividing a contract under Section 6903. Defendant contends that Section 6903 requires one contract that was divided into two contracts with the intent to avoid the Code.

---

[29] *State v. Herbert*, 2022 WL 811175, at *2 (Del. Super. Ct. Mar. 17, 2022)(quoting *U.S. v. Pendleton*, 2009 WL 320546, at *3 (D. Del. Feb. 10, 2009)).

[30] 29 *Del. C.* §6902(20)(Section 6902(20) defines "Professional Services" as "services which generally require specialized education, training or knowledge and involve intellectual skills.").

7

Whereas the State argues that fragmenting of a contract also occurs when a person divides payments under a contract to circumvent the Code.

First, in spite of arguments to the contrary, and the fact the State has entitled this Count as "structuring," the conduct alleged in the indictment is not "structuring" in the traditional context. To be clear, there is no allegation that the Defendant attempted to avoid the procurement procedure by taking a contract that exceeded $50,000 and dividing it into two or more contracts of less than $50,000 in order to avoid the State's bidding requirements. As such, the Section 5.4 of the BAPM argued by the Defendant is simply not applicable here. While the State's case appears to assert that there were conversations between Defendant and MCG personnel that bidding would be unnecessary if the contract was less than $50,000, no structuring of that contract is alleged, nor has the Court been presented any facts that would support such conduct. No party should attempt during the trial to assert otherwise.

That said, the Court finds that Section 6903 is unambiguous and, therefore, will apply the plain, literal meaning of its words, and is permitted to consider dictionary definitions "in determining the plain meaning of terms which are not defined in the statute."[31] The Merriam-Webster Dictionary defines "fragment" as

---

[31] *Cephas v. State*, 911 A.2d 799, 801 (Del. 2006).

"to break up or apart into fragments"[32] and defines "subdivide" as "to divide the parts into more parts…or into several parts."[33] Therefore, the phrase "fragmenting or subdividing a contract" references the breaking of a contract into multiple parts. Section 6903 does not distinguish what part of the contract is being fragmented or subdivided and a fair, unambiguous reading of the statute would logically cover contractual payments. So, the Court finds that fragmenting or dividing invoices into amounts less than $5,000 to avoid oversight would be expressed conduct contemplated in Section 6903.

Based on the indictment, the Court ascertains that the "fragmenting of a contract" asserted in the indictment focuses on the payments made under the MCG contract. The indictment specifically alleges that Defendant split payments due under the MCG contract into amounts less than $5,000 to evade DOA review. The indictment provides specific dates, amounts of payments and invoices, sources of funding, and recipients of those funds to support Count Three. Therefore, the second essential element of Section 6903 is adequately alleged in the indictment.

Finally, the Defendant argues that the indictment is insufficient because it does not allege the specific section of Chapter 69 that she intended to violate. Under

---

[32] *Fragment*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/fragment (last visited May 3, 2022).

[33] *Subdivide*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/subdivide (last visited May 3, 2022).

Delaware law, indictments are to be liberally construed when determining if the Defendant has the requisite notice of the offense charged.[34]

The Court finds that in the context of a Rule 12(b)(2) or Rule 48 motion, the State is not required to identify the specific section of Chapter 69 that the Defendant intended to avoid but may simply allege that the Defendant's acts were done to circumvent the Code as a whole. The Court finds this essential element satisfied because the indictment specifically states in paragraph 39 that Defendant's conduct was motivated by an intention to avoid Chapter 69. Moreover, the Defendant's mental state can be validly inferred based on the specific conduct alleged in Count Three.[35]

The Court, however, does not make this finding totally blind to the provisions of Chapter 69. It is a fair inference that Defendant's alleged conduct was done with the intent to circumvent Section 6901, which outlines the purposes of the procurement laws found in Chapter 69. Those purposes are to:

> (1) Create a more efficient procurement process to better enable the State to obtain the highest quality goods, materials and services at the best possible price, thereby maximizing the purchasing value of public moneys, and

> (2) Create a single forum in which the procurement needs of the state agencies and the technical and legal requirements of the Government Support Services are addressed simultaneously so as to increase mutual understanding, respect,

---

[34] *Malloy v. State*, 462 A.2d 1088, 1093 (Del. June 29, 1983).
[35] *Robinson v. State*, 600 A.2d 356, 359 (Del. Dec. 4, 1991).

trust and fair and equitable treatment for all persons who deal with the state procurement process.[36]

These considerations are at risk when a state official intentionally structures payments under a state contract to circumvent the "efficient procurement process" and retains sole control in deciding who receives State funds.

The State will be required to identify and establish at trial the specific section of Chapter 69 that the Defendant intended to violate and how the BAPM is incorporated therein. The indictment, however, need only allege that Defendant's conduct was done with the intent to violate Chapter 69, which it does. Therefore, the third essential element of Section 6903 is adequately alleged in the indictment.

In sum, the Court is satisfied that the Defendant has adequate notice of the conduct she must defend and that the specificity of the indictment ensures that she will not be subject to subsequent prosecution for the same conduct or offense. Defendant is sufficiently informed that she is charged with fragmenting payments under a contract, the specific dates, payments, and vendor relevant to the charge, and that she intended to do so in conflict with Chapter 69. As such, the Defendant has the necessary information to construct her defense of Count Three.

Lastly, the Court finds that Defendant has not been subject to unnecessary delay nor has she been prejudiced by the pace of this litigation. In fact, in the

---

[36] 29 *Del. C.* §6901.

pandemic world in which the Court is attempting to schedule cases for trial, she has fared better than most, and the critical timing of whether she can seek reelection has prioritized her case over many others. She has no basis to complain and this assertion by the Defendant is totally without merit.

Even if the State caused some delay in presenting charges to the Grand Jury, the Defendant has not been prejudiced or delayed any more than other defendants navigating the criminal justice system's post-pandemic landscape. The Court is satisfied with the progress toward resolution of this matter and will not exercise its discretionary power to dismiss the indictment.[37]

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Count Three of the Indictment pursuant to Rule 12(b)(2) and Rule 48(b) is **DENIED**.

**IT IS SO ORDERED.**

/s/ William C. Carpenter, Jr.
Judge William C. Carpenter, Jr.

---

[37] *State v. McElroy*, 561 A.2d 154, 156 (Del. May 11, 1989).